# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| Department of Justice, Antitrust Division | ) | |
| 450 5th Street, N.W., Suite 4000 | ) | |
| Washington, DC  20530, | ) | |
| | ) | Civil Action No.: |
| Plaintiff, | ) | |
| | ) | Filed: |
| v. | ) | Judge: |
| | ) | |
| **RAYCOM MEDIA, INC.** | ) | |
| RSA Tower, 20th Floor | ) | |
| 201 Monroe Street | ) | |
| Montgomery, AL  36104, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action to obtain equitable relief against defendant Raycom Media, Inc. ("Raycom"), and complains and alleges as follows:

1.    The United States brings this suit to prevent Raycom from continuing to own two of the top four broadcast television stations in Richmond, Virginia.  On April 1, 2008, Raycom consummated a transaction with Lincoln Financial Media Company ("Lincoln"), in which Raycom acquired WWBT-TV, the Richmond, Virginia, affiliate of the National Broadcasting Corporation ("NBC") (the "acquisition").  Raycom at that time already owned and continues to own WTVR-TV, the Richmond, Virginia, affiliate of CBS Broadcasting Inc. ("CBS").  In 2007, WWBT-TV earned approximately 32 percent and WTVR-TV earned approximately 23 percent of the broadcast television spot advertising revenues in the Richmond market.

2.    The acquisition eliminated substantial head-to-head competition between WWBT-TV and WTVR-TV.  Unless remedied, the loss of WWBT-TV as an independent significant competitor will substantially lessen competition for the sale of broadcast television spot advertising in the Richmond market, in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## I. Jurisdiction and Venue

3.    This Complaint is filed and this action is instituted under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Defendant from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

4.    Raycom sells broadcast television spot advertising to advertisers, a commercial activity that substantially affects and is in the flow of interstate commerce.  This Court has jurisdiction over the subject matter of this action pursuant to Sections 15 and 16 of the Clayton Act, 15 U.S.C. §§ 25, 26, and 28 U.S.C. §§ 1331, 1337.

5.    The Defendant has consented to personal jurisdiction and venue in this judicial district.

## II. The Defendant

6.    Raycom Media, Inc. is a Delaware corporation with its headquarters in Montgomery, Alabama.

7.    Raycom is one of the country's largest television broadcasters.  It currently owns and/or operates forty-six television stations in thirty-five markets and eighteen states.  Raycom also distributes syndicated television programming and provides event management, information system support, and website design and hosting services.

2

### III. Trade and Commerce

#### A.   *Relevant Product Market*

8.   Broadcast television stations attract viewers through their programming and then sell access to their viewers to businesses and others that want to advertise their products and services.  Broadcast television programming is transmitted by broadcast television stations, for free, over the air to television receivers.  Broadcast television programming is also simultaneously retransmitted, as aired, by cable television systems (systems that deliver programming, for a fee, through wires into homes), and satellite television systems (systems that deliver programming over the air, for a fee, to home satellite receivers).  Sales of "spot" advertising generate the majority of a broadcast television station's revenues.  Broadcast television spot advertising is purchased by advertisers that want to target potential customers in specific localized geographic markets.  It differs from network and syndicated television advertising, which is sold by the major television networks and producers of syndicated programs on a nationwide basis and broadcast in every market where the network or syndicated program is aired.  Spot advertising is sold either directly by the station or through its national representative on a localized, market-by-market basis.

9.   Broadcast television spot advertising possesses attributes that collectively set it apart from advertising using other types of media.  Television combines sight, sound, and motion, thereby creating a memorable and effective advertisement.  Moreover, of all media, broadcast television spot advertising reaches the largest percentage of all potential customers in a particular desired target audience and is therefore especially effective in introducing and establishing the image of a product.  A significant number of advertisers view broadcast

3

television spot advertising as a necessary advertising medium for which there is no close substitute. Such customers would not switch to another advertising medium – such as radio, cable, internet, or newspaper – or some combination thereof, if broadcast television spot advertising prices increased by a small but significant amount.

10.     In the Richmond DMA, cable television advertising is not a meaningful substitute for broadcast television spot advertising because the viewership of cable television networks, even when the networks are combined and packaged together, is significantly smaller than the viewership of broadcast television stations and is more demographically homogeneous. Additionally, unlike broadcast television advertising, it is generally difficult for advertisers to place last minute advertisements on cable television. Other media, such as radio, newspapers, internet or billboards, are even less desirable substitutes for broadcast television advertising. Satellite television advertising is not a substitute because satellite television providers cannot limit the distribution of their advertisements to a particular DMA, and therefore do not sell advertising in competition with local broadcast television stations.

11.     Broadcast television stations generally can identify advertisers with strong broadcast television advertising preferences. Broadcast television stations negotiate prices individually with advertisers; consequently, broadcast television stations can charge different advertisers different prices. In the event of a price increase in broadcast television spot advertising, some advertisers may shift some of their advertising to other media rather than absorb a price increase. However, the existence of such advertisers would not prevent broadcast television stations from profitably raising prices by a small but significant amount for a

substantial number of advertisers that would not shift to other media or broadcast television stations.

12.    Accordingly, the sale of broadcast television spot advertising is a relevant product market within the meaning of Section 7 of the Clayton Act.

## B.    *Relevant Geographic Market*

13.    A Designated Marketing Area ("DMA") is a non-overlapping geographic area defined by A. C. Nielsen Company, a firm that surveys television viewers and furnishes television stations, advertisers, and advertising agencies with data to aid in evaluating audience size and composition. The Richmond DMA encompasses the city of Richmond, Virginia, and the surrounding counties in which stations within the Richmond DMA receive the largest share of viewers.

14.    Advertisers use broadcast television stations within the Richmond DMA to reach the largest possible number of viewers within the entire DMA. Advertising on television stations outside the Richmond DMA is not an effective alternative for these advertisers because such stations are not viewed by a significant number of potential customers within the Richmond DMA. Thus, if there were a small but significant price increase in broadcast television spot advertising prices within the Richmond DMA, an insufficient number of advertisers would switch their advertising time purchases to television stations outside the Richmond DMA to render the price increase unprofitable.

15.    Accordingly, the Richmond DMA is a relevant geographic market for the sale of broadcast television spot advertising within the meaning of Section 7 of the Clayton Act.

5

## C.     Anticompetitive Effects

16.     Broadcast television stations compete for advertisers by providing advertisers access to their viewers. A station attracts viewers by selecting shows that appeal to the greatest number of viewers, and also tries to differentiate itself from other stations by appealing to specific demographic groups. Advertisers, in turn, are interested in using broadcast television spot advertising to reach a large audience, as well as to reach a high proportion of the type of viewers that are most likely to buy their products.

17.     Broadcast station ownership in the Richmond DMA is highly concentrated. Unremedied, Raycom's acquisition of WWBT-TV would give it control of two of the top four broadcast stations in the Richmond DMA and sales of over 50 percent of the total broadcast television spot advertising revenues in the Richmond DMA. Using a measure of concentration called the Herfindahl-Hirschman Index ("HHI"), defined and explained in Appendix A, combining the ownership of WWBT-TV and WTVR-TV substantially increases the HHI from approximately 2400 to approximately 3800, well above the 1800 threshold at which the Division normally considers a market to be highly concentrated.

18.     Prior to the transaction, WWBT-TV, the local NBC affiliate, and WTVR-TV, the local CBS affiliate, competed vigorously for advertisers because the demographic makeup of their viewers makes them close substitutes for a significant number of advertisers. The two stations competed head-to-head for a substantial number of advertisers seeking a desired audience, forcing the stations to offer better terms to win an advertiser's business. These advertisers would find it difficult or impossible to obtain competitive rates with the threat to "buy around" WWBT-TV and WTVR-TV, because they would be unable to as effectively reach their desired audiences without

6

purchasing advertising from Raycom's stations. Thus, without divestiture of one of its Richmond

stations, Raycom's acquisition of WWBT-TV substantially reduces competition for broadcast

television spot advertising in the Richmond DMA.

**D.    Entry**

19.    De novo entry into the Richmond DMA is unlikely, because the Federal

Communications Commission ("FCC") regulates entry through the issuance of licenses. These

licenses are difficult to obtain because the availability of spectrum is limited, and the regulatory

process associated with obtaining a license is lengthy. Even if a new signal became available,

commercial success would come, at best, over a period of many years, because all major broadcast

networks are already affiliated with a licensee in the Richmond DMA, the contracts last for many

years, and the broadcast networks rarely switch licensees when the contracts expire. Thus, entry

into the Richmond DMA broadcast television spot advertising market would not be timely, likely,

or sufficient to deter Raycom from unilaterally raising prices.

## IV. Violation Alleged

20.    Each and every allegation in paragraphs 1 through 19 of this Complaint is here

realleged with the same force and effect as though said paragraphs were here set forth in full.

21.    The effect of Raycom's acquisition of WWBT-TV would be to substantially lessen

competition in interstate trade and commerce, in violation of Section 7 of the Clayton Act.

22.    Raycom's acquisition of WWBT-TV will likely have the following effects, among

others:

    a.    competition in the sale of broadcast television spot advertising in the Richmond
        DMA would be substantially lessened;

7

b.      actual and potential competition between WWBT-TV and WTVR-TV in the sale of broadcast television spot advertising in the Richmond DMA would be eliminated; and

c.      the prices for broadcast television spot advertising in the Richmond DMA would likely increase.

23.     Unless restrained, the acquisition will violate Section 7 of the Clayton Act, as

amended, 15 U.S.C. § 18.

## V. Requested Relief

24.     Plaintiff requests:

a.      that Raycom's acquisition of WWBT-TV be adjudged to violate Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18;

b.      that Raycom be ordered to divest WTVR-TV in accord with the attached Hold Separate Stipulation and Order and proposed Final Judgment;

c.      that a proposed Final Judgment giving effect to the divestiture be entered by the Court  after compliance with the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16;

d.      that the United States be awarded the costs of this action; and

e.      that the United States be granted such other and further relief as the Court may deem just and proper.

Dated: August 28, 2008.

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES:**

_Deborah A. Garza_
Deborah A. Garza
Acting Assistant Attorney General

_Ann M Blaylock_
Ann Marie Blaylock (D.C. Bar No. 967825)
Trial Attorney
Litigation III Section
Antitrust Division
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
(202) 616-5932
Facsimile: (202) 514-7308
ann.blaylock@usdoj.gov

_Patricia A. Brink_
Patricia A. Brink
Deputy Director, Office of Operations

_John R. Read_
John R. Read (D.C. Bar No. 419373)
Chief, Litigation III Section
Nina B. Hale
Assistant Chief, Litigation III Section

9

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2008, I caused a copy of the foregoing Complaint to be served on the defendant in this matter in the manner set forth below:

By facsimile and U.S. mail:

Counsel for Defendant Raycom Media, Inc.

Everett J. Bowman, Esq.
Robinson Bradshaw & Hinson
101 North Tryon St., Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-8329
Facsimile: (704) 373-3929
Email: ebowman@rbh.com


Ann Marie Blaylock (D.C. Bar. No. 967825)
Litigation III Section
Antitrust Division
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
(202) 616-5932
Facsimile: (202) 514-7308
ann.blaylock@usdoj.gov

## Appendix A

## DEFINITION OF HHI

The term "HHI" means the Herfindahl-Hirschman Index, a commonly accepted measure of market concentration. The HHI is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. For example, for a market consisting of four firms with shares of 30, 30, 20, and 20 percent, the HHI is 2,600 ($30^2 + 30^2 + 20^2 + 20^2 = 2,600$). The HHI takes into account the relative size and distribution of the firms in a market. It approaches zero when a market is occupied by a large number of firms of relatively equal size and reaches its maximum of 10,000 when a market is controlled by a single firm. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

Markets in which the HHI is between 1000 and 1800 are considered to be moderately concentrated, and markets in which the HHI is in excess of 1800 points are considered to be highly concentrated. Transactions that increase the HHI by more than 100 points in highly concentrated markets presumptively raise significant antitrust concerns under the Department of Justice and Federal Trade Commission 1992 Horizontal Merger Guidelines.

08-1510
RMU

**CIVIL COVER SHEET**

JS-44
(Rev.1/6 DC)

## I (a) PLAINTIFFS

UNITED STATES OF AMERICA,
*Department of Justice*   1100/

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Raycom Media, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Montgomery, AL
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ann Marie Blaylock
United States Department of Justice
450 5th Street NW, Suite 4000
Washington, DC 20530
(202) 616-5932

Case: 1:08-cv-01510
Assigned To : Urbina, Ricardo M.
Assign. Date : 8/28/2008
Description: Antitrust

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⊙ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ⊙ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☒ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Section 7 of the Clayton Act, as amended, 15 U.S.C. Sec. 18

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint
JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 8/28/08    SIGNATURE OF ATTORNEY OF RECORD *Ann M Blaylock*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | Civil Action No.: |
| Plaintiff, | ) | |
| | ) | Filed: |
| v. | ) | Judge: |
| | ) | |
| **RAYCOM MEDIA, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' EXPLANATION OF CONSENT DECREE PROCEDURES

The United States submits this short memorandum summarizing the procedures regarding the Court's entry of the proposed Final Judgment. This Judgment would settle this case pursuant to the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) (the "APPA"), which applies to civil antitrust cases brought and settled by the United States.

1.    Today, the United States has filed a Complaint, a proposed Final Judgment, and a Hold Separate Stipulation and Order between the parties by which they have agreed that the Court may enter the proposed Final Judgment after the United States has complied with the APPA. The United States has also filed a Competitive Impact Statement relating to the proposed Final Judgment.

2.    The APPA requires that the United States publish the proposed Final Judgment and the Competitive Impact Statement in the Federal Register and in certain newspapers at least sixty (60) days prior to entry of the proposed Final Judgment. The notice will inform members of the public that they may submit comments about the proposed Final Judgment to the United States Department of Justice, Antitrust Division, 15 U.S.C. § 16(b)-(c).

3.    During the sixty-day period, the United States will consider, and at the close of that period respond to, any comments that it has received, and it will publish the comments and the United States' responses in the Federal Register.

4.    After the expiration of the sixty-day period, the United States will file with the Court the comments and the United States' responses, and it may ask the Court to enter the proposed Final Judgment (unless the United States has decided to withdraw its consent to entry of the Final Judgment, as permitted by Paragraph 2 of the Stipulation, *see* 15 U.S.C. § 16(d)).

5.    If the United States requests that the Court enter the proposed Final Judgment after compliance with the APPA, 15 U.S.C. § 16(e)-(f), then the Court may enter the Final Judgment without a hearing, provided that it concludes that the Final Judgment is in the public interest.

Dated: August 28, 2008

Respectfully submitted,

*Ann M Blaylock*

Ann Marie Blaylock (D.C. Bar. No. 967825)
Litigation III Section
Antitrust Division
450 5th St. NW, Suite 4000
Washington, DC  20530
(202) 616-5932
Facsimile: (202) 514-7308
ann.blaylock@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Ann Marie Blaylock, hereby certify that on August 28, 2008, I caused a copy of the foregoing Explanation of Consent Decree Procedures to be served on defendant Raycom Media, Inc. by mailing the document first-class, postage prepaid, to the duly authorized legal representative of the defendant, as follows:


Counsel for Defendant Raycom Media, Inc.

Everett J. Bowman, Esq.
Robinson Bradshaw & Hinson
101 North Tryon St., Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-8329
Facsimile: (704) 373-3929
Email: ebowman@rbh.com

Ann Marie Blaylock (D.C. Bar. No. 967825)
Litigation III Section
Antitrust Division
450 5th St. NW, Suite 4000
Washington, DC  20530
(202) 616-5932
Facsimile: (202) 514-7308
ann.blaylock@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | |
| v. | : | Judge: |
| | : | |
| | : | Filed: |
| RAYCOM MEDIA, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## FINAL JUDGMENT

WHEREAS, plaintiff, United States of America, filed its Complaint on August 28, 2008, the

United States and defendant, Raycom Media, Inc. ("Raycom"), by their respective attorneys,

have consented to the entry of this Final Judgment without trial or adjudication of any issue of

fact or law, and without this Final Judgment constituting any evidence against or admission by

any party regarding any issue of fact or law;

AND WHEREAS, defendant agrees to be bound by the provisions of this Final Judgment

pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture

of certain rights or assets by defendant to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendant to make a certain divestiture for the

-1-

purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendant has represented to the United States that the divestiture required below can and will be made and that it will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendant under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Final Judgment:

A.        "Acquirer" means the entity to which defendant divests the Divestiture Assets.

B.        "Raycom" means defendant Raycom Media, Inc., a Delaware limited liability company with its headquarters in Montgomery, Alabama, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.        "DMA" means designated market area as defined by A.C. Nielsen Company based upon viewing patterns and used by the Investing In Television BIA Market Report 2007

-2-

(2nd edition). DMAs are ranked according to the number of households therein and are used by broadcasters, advertisers and advertising agencies to aid in evaluating television audience size and composition.

      D.      "Richmond market" means the Richmond, Virginia DMA broadcast television market.

      E.      "WTVR-TV" means the broadcast television station WTVR-TV located in the Richmond market owned by defendant.

      F.      "Divestiture Assets" means all of the assets, tangible or intangible, used in the operation of WTVR-TV, including, but not limited to, all real property (owned or leased), broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the station; all licenses, permits, authorizations, and applications therefor issued by the Federal Communications Commission ("FCC") and other government agencies relating to the station; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases, and commitments and understandings of defendant relating to the operation of WTVR-TV; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to WTVR-TV; all customer lists, contracts, accounts, and credit records; and all logs and other records maintained by defendant in connection with WTVR-TV.

### III. Applicability

A.      This Final Judgment applies to Raycom, as defined above, and all other persons in active concert or participation with Raycom who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Section IV and V of this Final Judgment, Defendant sells or otherwise disposes of all or substantially all of its assets or of lesser business units that include the Divestiture Assets, defendant shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendant need not obtain such an agreement from the acquirer of the assets divested pursuant to this Final Judgment.

### IV. Divestiture

A.      Defendant is ordered and directed, within thirty (30) calendar days after the filing of the Complaint in this matter or five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period, not to exceed 60 calendar days in total, and shall notify the Court in such circumstances.  With respect to divestiture of the Divestiture Assets by defendant or the trustee appointed pursuant to Section V of this Final Judgment, if applications have been filed with the FCC within the period permitted for divestiture seeking approval to assign or transfer licenses to the Acquirer of the Divestiture Assets, but an order or other dispositive action by the FCC on such applications has not been issued before the end of the period permitted for divestiture, the period shall be extended with respect to divestiture of the Divestiture Assets for which FCC approval has not

-4-

been issued until five (5) days after such approval is received. Defendants agree to use their best efforts to accomplish the divestitures set forth in this Final Judgment and to seek all necessary regulatory approvals as expeditiously as possible. This Final Judgment does not limit the FCC's exercise of its regulatory powers and process with respect to the Divestiture Assets. Authorization by the FCC to conduct the divestiture of a Divestiture Asset in a particular manner will not modify any of the requirements of this decree.

      B.     In accomplishing the divestiture ordered by this Final Judgment, defendant promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendant shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendant shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privileges or work-product doctrine. Defendant shall make available such information to the United States at the same time that such information is made available to any other person.

      C.     Defendant shall provide the Acquirer and the United States information relating to the personnel involved in the operation of the Divestiture Assets to enable the Acquirer to make offers of employment. Defendant will not interfere with any negotiations by the Acquirer to employ any defendant employee whose primary responsibility is the operation of the Divestiture Assets.

D.      Defendant shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the business to be divested; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.      Defendant shall warrant to the Acquirer that each asset will be operational on the date of sale.

F.      Defendant shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.      Defendant shall warrant to the Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendant will not undertake, directly or indirectly, any challenges to the environmental, zoning or other permits relating to the operation of the Divestiture Assets.

H.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing commercial broadcast television business.  Divestiture of the Divestiture Assets must be made to a single Acquirer that can demonstrate to the sole satisfaction

of the United States that the Divestiture Assets will remain viable and the divestiture of such

assets will remedy the competitive harm alleged in the Complaint. The divestiture, whether

pursuant to Section IV or Section V of this Final Judgment,

> (1)    shall be made to an Acquirer that, in the United States's sole judgment, has the intent and capability (including the necessary managerial, technical, operational, and financial capability) of competing effectively in the commercial broadcast television business in the Richmond market; and

> (2)    shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement(s) between an Acquirer and defendant gives them the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

### V. Appointment of Trustee

A.    If defendant has not divested the Divestiture Assets within the time period

specified in Section IV(A), defendant shall notify the United States of that fact in writing. Upon

application of the United States, the Court shall appoint a trustee selected by the United States

and approved by the Court to effect the divestiture of the Divestiture Assets.

B.    After the appointment of a trustee becomes effective, only the trustee shall have

the right to sell the Divestiture Assets. The trustee shall have the power and authority to

accomplish the divestiture to an Acquirer acceptable to the United States at such price and on

such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions

of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court

deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the

cost and expense of defendant any investment bankers, attorneys, or other agents, who shall be

solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.    Defendant shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendant must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.    The trustee shall serve at the cost and expense of defendant, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendant and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.    Defendant shall use its best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities related to the Divestiture Assets and defendant shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable

protection for trade secret or other confidential research, development, or commercial information. Defendant shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

      F.     After its appointment, the trustee shall file monthly reports with the United States and the Court, setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

      G.     If the trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such report shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final

Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

### VI. Notice of Proposed Divestiture

A.       Within two (2) business days following execution of a definitive divestiture agreement, defendant or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify defendant. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.       Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendant, the proposed Acquirer(s), any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s) and any other potential Acquirer. Defendant and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.       Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendant, the proposed Acquirer(s), any third party and the trustee, whichever is later, the United States shall provide written notice to defendant and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice

-10-

that it does not object, the divestiture may be consummated, subject only to defendant's limited

right to object to the sale under Section V(C) of this Final Judgment.  Without prior written

notice that the United States does not object to the proposed Acquirer or upon objection by the

United States, a divestiture proposed under Section IV or Section V shall not be consummated.

Upon objection by defendant under Section V(C), a divestiture proposed under Section V shall

not be consummated unless approved by the Court.

## VII.  Financing

Defendant shall not finance all or any part of any purchase made pursuant to Section IV

or V of this Final Judgment.

## VIII.  Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, defendant

shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by

this Court.  Defendant shall take no action that would jeopardize the divestiture ordered by this

Court.

## IX.  Affidavits

A.        Within twenty (20) calendar days of the filing of the Complaint in this matter, and

every thirty (30) calendar days thereafter until the divestiture has been completed under Section

IV or V, defendant shall deliver to the United States an affidavit as to the fact and manner of its

compliance with Section IV or V of this Final Judgment.  Each such affidavit shall include the

name, address, and telephone number of each person who, during the preceding thirty (30)

calendar days, made an offer to acquire, expressed an interest in acquiring, entered into

negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the

Divestiture Assets, and shall describe in detail each contact with any such person during that

period. Each such affidavit shall also include a description of the efforts defendant has taken to

solicit buyers for the Divestiture Assets and to provide required information to prospective

Acquirers, including the limitations, if any, on such information. Assuming the information set

forth in the affidavit is true and complete, any objection by the United States to information

provided by defendant, including limitation on information, shall be made within fourteen (14)

calendar days of receipt of such affidavit.

        B.      Within twenty (20) calendar days of the filing of the Complaint in this matter,

defendant shall deliver to the United States an affidavit that describes in reasonable detail all

actions defendant has taken and all steps defendant has implemented on an ongoing basis to

comply with Section VIII of this Final Judgment. Defendant shall deliver to the United States an

affidavit describing any changes to the efforts and actions outlined in its earlier affidavits filed

pursuant to this section within fifteen (15) calendar days after the change is implemented.

        C.      Defendant shall keep all records of all efforts made to preserve and divest the

Divestiture Assets until one year after such divestiture has been completed.

## X. Compliance Inspection

        A.      For the purposes of determining or securing compliance with this Final Judgment,

or of determining whether the Final Judgment should be modified or vacated, and subject to any

legally recognized privilege, from time to time authorized representatives of the United States

Department of Justice, including consultants and other persons retained by the United States,

shall, upon written request of an authorized representative of the Assistant Attorney General in

charge of the Antitrust Division, and on reasonable notice to defendant, be permitted:

-12-

(1) access during defendant's office hours to inspect and copy, or at the option of the United States, to require defendant to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendant, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, defendant's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendant.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendant shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States or, pursuant to a customary protective order or waiver of confidentiality by defendant, the FCC, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by defendant to the United States, defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and defendant marks each pertinent page of such material, "Subject to

claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give defendant ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. No Reacquisition

Defendant may not reacquire any part of the Divestiture Assets or enter into any local marketing agreement, joint sales agreement, or any other cooperative selling arrangement with respect to the Divestiture Assets during the term of this Final Judgment.

## XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV. *Public Interest Determination*

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____

Court approval subject to procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16:

_____
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | |
| v. | : | Judge: |
| | : | Filed: |
| RAYCOM MEDIA, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

I.

## DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A.    "Acquirer" means the entity to which defendant divests the Divestiture Assets.

B.    "Raycom" means defendant Raycom Media, Inc., a Delaware limited liability company with its headquarters in Montgomery, Alabama, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

-1-

C.    "DMA" means designated market area as defined by A.C. Nielsen Company based upon viewing patterns and used by the <u>Investing In Television BIA Market Report 2007 (2nd edition)</u>.  DMAs are ranked according to the number of households therein and are used by broadcasters, advertisers and advertising agencies to aid in evaluating television audience size and composition.

D.    "Richmond market" means the Richmond, Virginia DMA broadcast television market.

E.    "WTVR-TV" means the broadcast television station WTVR-TV located in the Richmond market owned by defendant.

F.    F.    "Acquired Assets" means all of the assets, tangible or intangible, used in the operations of WWBT-TV, including, but not limited to, all real property (owned or leased) used in the operation of the stations, all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the stations; all licenses, permits, authorizations, and applications therefor issued by the Federal Communications Commission ("FCC") and other government agencies related to the station; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases and commitments and understandings of defendant relating to the operations of WWBT-TV; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to WWBT-TV; all customer lists, contracts, accounts, and credit records; and all logs and other records maintained by defendant in connection with WWBT-TV.

–2–

G.    "Divestiture Assets" means all of the assets, tangible or intangible, used in the operations of WTVR-TV, including, but not limited to, all real property (owned or leased) used in the operation of the stations, all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the stations; all licenses, permits, authorizations, and applications therefor issued by the Federal Communications Commission ("FCC") and other government agencies related to the station; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases and commitments and understandings of defendant relating to the operations of WTVR-TV; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to WTVR-TV; all customer lists, contracts, accounts, and credit records; and all logs and other records maintained by defendant in connection with WTVR-TV.

II.

## OBJECTIVES

The Final Judgment filed in this case is meant to ensure defendant's prompt divestiture of WTVR-TV for the purpose of preserving competition in the sale of broadcast television advertising time in the Richmond market, and to remedy the effects that the United States alleges would otherwise result from Raycom owning two broadcast television stations in the Richmond market. This Hold Separate Stipulation and Order ensures that WTVR-TV remains an independent, economically viable, ongoing business that will remain independent and uninfluenced by defendant's other

–3–

operations, and that competition is maintained during the pendency of the ordered divestiture.

III.

## JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over the parties hereto, and venue of this action is proper in the United States District Court for the District of Columbia.

IV.

## COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.     The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A, may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendant and by filing that notice with the Court.

B.     Defendant shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the filing of this Hold Separate Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment as

–4–

though the same were in full force and effect as an Order of the Court.

C.    This Hold Separate Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

D.    In the event (1) the United States has withdrawn its consent, as provided in Section IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

E.    Defendant represents that the divestiture ordered in the proposed Final Judgment can and will be made, and that defendant later will raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.

## HOLD SEPARATE PROVISIONS

A.    Within twenty (20) calendar days after the entry of this Hold Separate Stipulation and Order, defendant will inform the United States of the steps it has taken to comply with this Hold Separate Stipulation and Order.

–5–

B.    While this Hold Separate Stipulation and Order remains in effect,

defendant shall, solely with respect to the Divestiture Assets, have the following

obligations:

> (i)  to preserve, maintain, and continue to operate the Divestiture Assets as
> an economically viable and competitive, ongoing business, with
> management, sales, and operations of such assets held entirely separate,
> distinct, and apart from the operations of the Acquired Assets;
>
> (ii)  to not coordinate their production, marketing, or terms of sale of any
> products of the Acquired Assets with those produced, marketed, or sold by
> any of the Divestiture Assets;
>
> (iii)  to take all steps necessary to ensure that (1) the Divestiture Assets will
> be maintained and operated as an independent, ongoing, economically viable
> and active competitor in the Richmond market; (2) management of the
> Divestiture Assets, including the performance of decision-making functions
> regarding marketing and pricing, will be kept separate and apart from and not
> influenced by operations of the Acquired Assets; and (3) the books, records,
> competitively sensitive sales, marketing and pricing information, and
> decision-making associated with any of the Divestiture Assets will be kept
> separate and apart from that of defendant's other operations;
>
> (iv)  to use all reasonable efforts to maintain and increase sales and revenues
> of broadcast television advertising time by the Divestiture Assets, and to
> maintain at 2006 or previously approved levels for 2007, whichever are
> higher, all promotional, advertising, sales, technical assistance, marketing
> and merchandising support for the Divestiture Assets;
>
> (v)  to provide sufficient working capital and lines and sources of credit to
> continue to maintain the Divestiture Assets as an economically viable and
> competitive, ongoing business, consistent with the requirements of Sections
> V(B)(i) and V(B)(iii);
>
> (vi)  to take all steps necessary to ensure that the Divestiture Assets are fully
> maintained in operable condition, and to maintain and adhere to normal
> repair and maintenance schedules for the Divestiture Assets;
>
> (vii)  to maintain, in accordance with sound accounting principles, separate,
> accurate and complete financial ledgers, books and records that report on a
> periodic basis, such as the last business day of every month, consistent with
> past practices, the assets, liabilities, expenses, revenues and income of the
> Divestiture Assets; and

(viii)  to not transfer or reassign employees with primary responsibility for sales, marketing and programming of the Divestiture Assets to any of defendant's other operations, except for transfer bids initiated by employees pursuant to defendant's regular, established job posting policy, and to provide the United States with ten (10) calendar days' notice of such transfer.

C.    Defendant shall not, except as part of a divestiture approved by the United States in accordance with the terms of the Final Judgment, remove, sell, lease, assign, transfer, license, pledge, or otherwise dispose of any of the Divestiture Assets.

D.    Defendant shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

E.    Within ten (10) days of the filing of the Complaint, defendant shall appoint, subject to the approval of the United States, a person or persons to oversee the Divestiture Assets and be responsible for defendant's compliance with this section. This person shall have complete managerial responsibility for the Divestiture Assets, subject to the provisions of this Final Judgment.  In the event such person is unable to perform his duties, defendant shall appoint, subject to the approval of the United States, a replacement within ten (10) working days.  Should defendant fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement at defendant's expense.

F.    Defendant shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestiture pursuant to the Final Judgment to an Acquirer acceptable to the United States.

–7–

G.    This Hold Separate Stipulation and Order shall remain in effect until

consummation of the divestiture required by the proposed Final Judgment or until

further order of the Court.

Dated: Jany 10 , 2008

Respectfully submitted,

For Plaintiff
**UNITED STATES OF AMERICA:**

_____
Mark A. Merva, Esquire
United States Department of Justice
Antitrust Division, Litigation III Section
325 7th Street, N.W., Suite 300
Washington, DC 20530
(202) 616-1398

For Defendant
**RAYCOM MEDIA, INC.**

_____
Everett J. Bowman
Robinson Bradshaw & Hinson, P.A.
101 North Tryon St., Suite 1900
Charlotte, NC 28246
(704) 377-8329

**ORDER**

IT IS SO ORDERED by the Court, this ____ day of _____, 2008

_____
United States District Judge

–8–