UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 08-1510 |
| v. | Judge: |
| RAYCOM MEDIA, INC., | Filed: |
| Defendant. | |

FILED

SEP 3 - 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

I.

### DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A. "Acquirer" means the entity to which defendant divests the Divestiture Assets.

B. "Raycom" means defendant Raycom Media, Inc., a Delaware limited liability company with its headquarters in Montgomery, Alabama, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

-1-

C.  "DMA" means designated market area as defined by A.C. Nielsen Company based upon viewing patterns and used by the <u>Investing In Television BIA Market Report 2007 (2nd edition)</u>. DMAs are ranked according to the number of households therein and are used by broadcasters, advertisers and advertising agencies to aid in evaluating television audience size and composition.

D.  "Richmond market" means the Richmond, Virginia DMA broadcast television market.

E.  "WTVR-TV" means the broadcast television station WTVR-TV located in the Richmond market owned by defendant.

F.  F.  "Acquired Assets" means all of the assets, tangible or intangible, used in the operations of WWBT-TV, including, but not limited to, all real property (owned or leased) used in the operation of the stations, all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the stations; all licenses, permits, authorizations, and applications therefor issued by the Federal Communications Commission ("FCC") and other government agencies related to the station; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases and commitments and understandings of defendant relating to the operations of WWBT-TV; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to WWBT-TV; all customer lists, contracts, accounts, and credit records; and all logs and other records maintained by defendant in connection with WWBT-TV.

G.  "Divestiture Assets" means all of the assets, tangible or intangible, used in the operations of WTVR-TV, including, but not limited to, all real property (owned or leased) used in the operation of the stations, all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the stations; all licenses, permits, authorizations, and applications therefor issued by the Federal Communications Commission ("FCC") and other government agencies related to the station; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases and commitments and understandings of defendant relating to the operations of WTVR-TV; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to WTVR-TV; all customer lists, contracts, accounts, and credit records; and all logs and other records maintained by defendant in connection with WTVR-TV.

## II.

## OBJECTIVES

The Final Judgment filed in this case is meant to ensure defendant's prompt divestiture of WTVR-TV for the purpose of preserving competition in the sale of broadcast television advertising time in the Richmond market, and to remedy the effects that the United States alleges would otherwise result from Raycom owning two broadcast television stations in the Richmond market. This Hold Separate Stipulation and Order ensures that WTVR-TV remains an independent, economically viable, ongoing business that will remain independent and uninfluenced by defendant's other

operations, and that competition is maintained during the pendency of the ordered divestiture.

### III.

### JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over the parties hereto, and venue of this action is proper in the United States District Court for the District of Columbia.

### IV.

### COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A. The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A, may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendant and by filing that notice with the Court.

B. Defendant shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the filing of this Hold Separate Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment as

though the same were in full force and effect as an Order of the Court.

C.  This Hold Separate Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

D.  In the event (1) the United States has withdrawn its consent, as provided in Section IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

E.  Defendant represents that the divestiture ordered in the proposed Final Judgment can and will be made, and that defendant later will raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

V.

## HOLD SEPARATE PROVISIONS

A.  Within twenty (20) calendar days after the entry of this Hold Separate Stipulation and Order, defendant will inform the United States of the steps it has taken to comply with this Hold Separate Stipulation and Order.

B.  While this Hold Separate Stipulation and Order remains in effect, defendant shall, solely with respect to the Divestiture Assets, have the following obligations:

(i) to preserve, maintain, and continue to operate the Divestiture Assets as an economically viable and competitive, ongoing business, with management, sales, and operations of such assets held entirely separate, distinct, and apart from the operations of the Acquired Assets;

(ii) to not coordinate their production, marketing, or terms of sale of any products of the Acquired Assets with those produced, marketed, or sold by any of the Divestiture Assets;

(iii) to take all steps necessary to ensure that (1) the Divestiture Assets will be maintained and operated as an independent, ongoing, economically viable and active competitor in the Richmond market; (2) management of the Divestiture Assets, including the performance of decision-making functions regarding marketing and pricing, will be kept separate and apart from and not influenced by operations of the Acquired Assets; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making associated with any of the Divestiture Assets will be kept separate and apart from that of defendant's other operations;

(iv) to use all reasonable efforts to maintain and increase sales and revenues of broadcast television advertising time by the Divestiture Assets, and to maintain at 2006 or previously approved levels for 2007, whichever are higher, all promotional, advertising, sales, technical assistance, marketing and merchandising support for the Divestiture Assets;

(v) to provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as an economically viable and competitive, ongoing business, consistent with the requirements of Sections V(B)(i) and V(B)(iii);

(vi) to take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition, and to maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets;

(vii) to maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income of the Divestiture Assets; and

(viii) to not transfer or reassign employees with primary responsibility for sales, marketing and programming of the Divestiture Assets to any of defendant's other operations, except for transfer bids initiated by employees pursuant to defendant's regular, established job posting policy, and to provide the United States with ten (10) calendar days' notice of such transfer.

C.   Defendant shall not, except as part of a divestiture approved by the United States in accordance with the terms of the Final Judgment, remove, sell, lease, assign, transfer, license, pledge, or otherwise dispose of any of the Divestiture Assets.

D.   Defendant shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

E.   Within ten (10) days of the filing of the Complaint, defendant shall appoint, subject to the approval of the United States, a person or persons to oversee the Divestiture Assets and be responsible for defendant's compliance with this section. This person shall have complete managerial responsibility for the Divestiture Assets, subject to the provisions of this Final Judgment. In the event such person is unable to perform his duties, defendant shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should defendant fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement at defendant's expense.

F.   Defendant shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestiture pursuant to the Final Judgment to an Acquirer acceptable to the United States.

G. This Hold Separate Stipulation and Order shall remain in effect until consummation of the divestiture required by the proposed Final Judgment or until further order of the Court.

Dated: January 10, 2008

Respectfully submitted,

For Plaintiff
**UNITED STATES OF AMERICA:**

_____
Mark A. Merva, Esquire
United States Department of Justice
Antitrust Division, Litigation III Section
325 7th Street, N.W., Suite 300
Washington, DC 20530
(202) 616-1398

For Defendant
**RAYCOM MEDIA, INC.**

_____
Everett J. Bowman
Robinson Bradshaw & Hinson, P.A.
101 North Tryon St., Suite 1900
Charlotte, NC 28246
(704) 377-8329

**ORDER**

IT IS SO ORDERED by the Court, this 2nd day of September, 2008

_____
United States District Judge